UNITED STATES  DISTRICT COURT

Northern District of California

JAMES BRADY, *et al.*,

                 Plaintiffs,

    v.

DELOITTE & TOUCHE LLP

               Defendant.

_____/

No. C 08-00177 SI

**ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION**

On February 19, 2010, the Court held a hearing on plaintiffs' motion for class certification. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby GRANTS plaintiffs' motion.

**BACKGROUND**

Plaintiffs filed a class action complaint against defendant Deloitte & Touche LLP on January 10, 2008.  Plaintiffs have brought suit on behalf of all salaried California employees of defendant's "Audit line of service" who were not licensed accountants and were not paid overtime for working more than eight hours in a day or forty hours in a week.  TAC ¶ 1.  The proposed class consists of such employees who worked for defendants from four years prior to filing of the initial complaint in this matter to the present. *Id.*  Plaintiffs allege that defendant misclassified employees under California labor laws, failed to provide them overtime compensation, failed to pay wages owed at the end of class members' employment, and by this conduct violated California Business & Professions Code section 17200, *et seq. Id.* ¶ 2.  Now before the Court is plaintiffs' motion for class certification seeking an order (1) certifying this lawsuit as a class action, (2) appointing Markun, Zusman & Compton LLP as class counsel, (3) appointing Brady, Cavanagh and Chiu as class representatives, and (4) directing that notice

1    be given to the class members by United States mail at plaintiffs' expense.

2           Defendant Deloitte & Touche LLP is a subsidiary of parent company Deloitte & Touche USA.

3    Defendant's primary source of business is the auditing of financial statements, referred to in the

4    company lexicon as Audit and Enterprise Risk Services.  The overall goal of an audit of a financial

5    statement is to obtain reasonable assurance that the client's financial statements are fairly stated in all

6    material respects.  Baird Decl., Ex. A at 83:9-13.   Non-partner employees at defendant Deloitte are

7    divided into seven different categories, arranged here in order of increasing hierarchy: Audit Assistant,

8    Audit Senior Assistant, Audit In-Charge, Audit Senior, Audit Manager, Audit Senior Manager and

9    Audit Director.  To be an Audit Manager or higher, an employee must be a Certified Public Accountant

10   (CPA).  The four lower positions do not require a CPA license.  The proposed class consists entirely of

11   employees and former employees in the lower four positions, and therefore none of the proposed

12   members held CPA licenses during the time at issue.

13          Every financial audit performed by defendant consists of five phases: 1) preliminary engagement

14   activities, 2) audit planning, 3) performing the audit plan, 4) concluding and reporting, and 5) post-

15   engagement activities.  During their first two years at Deloitte, unlicensed employees participate almost

16   exclusively in phase three, performing the audit plan.  Performing the audit plan means testing financial

17   statements of clients by obtaining and reviewing underlying documentation.  As unlicensed employees

18   remain at the company for longer periods of time, they may be given the opportunity to participate in

19   phases two and four to some degree.

20          Plaintiffs emphasize the simplicity and predictability of the tasks performed by all members of

21   the proposed class.  All proposed class members have received national core training commensurate

22   with their respective levels of experience.  *Id.* at 186:1-19.  The purpose of the national training is to

23   ensure that all unlicensed employees perform audits in the same manner.  Baird Decl., Ex. D.  The job

24   responsibilities of staff (unlicensed employees with less than two "busy seasons" experience) include

25   the performance of audit procedures, discussing any significant issues as they arise with the seniors or

26   managers on the engagement, finalizing and properly filing the working papers, and gathering

27

28                                                        2

1    information.  Baird Decl., Ex. C at DT002793.  Seniors are employees with two or more "busy seasons"

2    experience, but who still lack CPA status.  Seniors spend significant time performing testing as well,

3    but also supervise staff and participate in audit planning.  *See, e.g.*, Cavanagh Decl. ¶ 19, Chiu Decl. ¶

4    18.

5            Plaintiffs also emphasize the highly regulated nature of working at Deloitte.  The audit approach

6    developed by Deloitte seeks to standardize employee training across all offices of the firm.  The

7    software used by employees of Deloitte, called Audit Systems 2 (AS/2), "supports all phases of the audit

8    process and contains tools for analyzing, documenting, managing, communicating . . . and presenting

9    information."  Baird Declaration, Ex. F at DT 075527.  This software can generate Model Audit

10   Programs (MAPS), which plaintiffs allege are like detailed roadmaps created during the audit planning

11   phase which set forth how to complete each section of the audit.  The duties of the proposed class

12   members are also regulated to some degree by statute.  Section 5053 of the California Business and

13   Professions Code provides that unlicensed persons are allowed to serve as an employee of a CPA if "the

14   employee or assistant works under the control and supervision of a certified public accountant."  Similar

15   rules have been promulgated by the American Institute of Certified Public Accountants (AICPA), a

16   professional organization for CPAs, and the Public Company Accounting Oversight Board (PCAOB),

17   a private non-profit corporation created by the Sarbanes-Oxley Act to oversee the auditors of public

18   companies.  AICPA Prof. Standards, Vol.1 § 310.11; PCAOB Standards of Fieldwork, *see* RJN, Ex. F.

19   Plaintiffs argue that these regulations, along with the standardized training and software, indicate that

20   unlicensed employees at Deloitte exercise very little discretion in performance of their duties.

21           Defendant, in contrast, emphasizes facts that show a wide variety of job responsibilities among

22   members of the proposed class, and has submitted several declarations to demonstrate these variations.

23   Within the category of Senior Audit Assistants, for example, proposed class members were able to

24   exercise varying amounts of discretion.  *See, e.g.*, Wang Decl. ¶ 20, Peralta Decl. ¶ 4.  Some Audit

25   Senior Assistants consulted with their supervisor whenever a discrepancy arose and did not have any

26   significant discretion, whereas others challenged audit methodology and/or participate in the preparation

27

28                                                    3

1   of an audit plan.  Defendants cite similar disparities in the declarations of unlicensed employees in the

2   Audit Assistant and Audit In-Charge Categories.  *See* Defendant's Compendium of Declarations, Docket

3   Nos. 88-89.  Defendant also contends that proposed class members performed work outside of their

4   level, completing tasks that would normally be reserved for a person in a higher position.

5

6                                          **LEGAL STANDARD**

7           The decision as to whether to certify a class is committed to the discretion of the district court

8   within the guidelines of Federal Rule of Civil Procedure 23.  *See* Fed. R. Civ. P. 23; *see also Cummings*

9   *v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003).  A court may certify a class if a plaintiff demonstrates that

10  all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of

11  the requirements of Federal Rule of Civil Procedure 23(b) have been met.  *See* Fed. R. Civ. P. 23; *see*

12  *also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

13          Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class

14  must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that

15  are common to the class, (3) the claims or defenses of the representative parties are typical of the claims

16  or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests

17  of the class.  *See* Fed. R. Civ. P. 23(a).

18          A plaintiff must also establish that one or more of the grounds for maintaining the suit are met

19  under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that

20  declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common

21  questions of law or fact predominate and the class action is superior to other available methods of

22  adjudication.  *See* Fed. R. Civ. P. 23(b).

23          In determining the propriety of a class action, the question is not whether the plaintiffs have

24  stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23

25  are met.  *See Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *see also Eisen v. Carlisle &*

26  *Jacquelin*, 417 U.S. 156, 178 (1974).  The Court is obliged to accept as true the substantive allegations

27

28                                                    4

1    made in the complaint.  *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,

2    691 F.2d 1335, 1342 (9th Cir. 1982); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975);

3    *Burton v. Mountain West Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 608 (D. Mont. 2003).  Therefore

4    the class order is speculative in one sense because the plaintiff may not be able to later prove the

5    allegations.  *See Blackie*, 524 F.2d at 901 n.17.  However, although the Court may not require

6    preliminary proof of the claim, it "need not blindly rely on conclusory allegations which parrot Rule 23

7    requirements.  Courts may also consider the legal and factual issues presented by plaintiff's complaint."

8    2 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, 7.26 (4th ed. 2005).  Sufficient

9    information must be provided to form a reasonable informed judgment on each of the requirements of

10   Fed. R. Civ. P. 23.  *See Blackie*, 524 F.2d at 901 n.17.  In order to safeguard due process interests and

11   the judicial process, the Court conducts an analysis that is as rigorous as necessary to determine whether

12   class certification is appropriate.  *See Chamberlan*, 402 F.3d 952, 961 (9th Cir. 2005); *see also Gen.*

13   *Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

14

15                                                      **DISCUSSION**

16   **I.      Rule 23(a)**

17            **A.      Numerosity**

18            Rule 23(a)(1) requires that the class be so numerous that the number of potential plaintiffs cannot

19   be practicably joined.  Whether joinder would be impracticable depends on the facts and circumstances

20   of each case and does not require any specific minimum number of class members.  The proposed class

21   in this case would consist of "[a]ll persons employed by Defendant[] in the State of California as

22   salaried exempt employees in Defendant['s] Audit line of service with positions below the level of

23   manager."  Third Amended Complaint, ¶ 22.  Defendant does not challenge the numerosity requirement,

24   and the proposed class would include approximately 1920 persons.  *See* Defendant's Amended

25   Responses to Brady's Interrogatory.  A proposed class of nearly 2000 is large enough to make joinder

26   impracticable, and the numerosity requirement is therefore satisfied.

27

28                                                            5

**B.      Commonality**

Rule 23(a)(2) requires that there be some question of law or fact common to the class as a whole. Rule 23(a)(2)'s commonality requirement has been "construed permissively," and its requirements deemed "minimal."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988).

The Court finds that there are numerous questions of facts or law that are common to the proposed class.  Common questions of law include whether the professional exemption under California law requires a license for accountants, whether accounting is a "learned profession" under California Wage Order 4-2001, and whether the duties of proposed class members would qualify for administrative exception under California law.  Common factual questions include whether defendant's standardized policies and procedures prevented the class members from customarily and regularly exercising discretion and independent judgment with respect to matters of significance, whether defendant categorically classified all class members as exempt, whether defendant required class members to work overtime, along with a host of other questions relating to overtime, meal breaks, timekeeping and pay. These common issues of law and fact satisfy the "minimal" requirements of Rule 23(a)(2).  *Hanlon*, 150 F.3d at 1019.

**C.      Typicality**

Rule 23(a)(3) examines the class representatives and asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  As the Ninth Circuit has explained, "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  The three named plaintiffs and the remainder of the proposed class were all unlicensed staff of defendant during the period of time at issue.  In addition, the representative plaintiffs' claims with respect to alleged misclassification under the state labor laws, lack of overtime pay, and denial of meal breaks are similar to those of the proposed class.  Under the permissive standards of Rule 23(a)(3), plaintiffs have

6

1   sufficiently demonstrated typicality.

2

3       **D.      Adequacy of Representation**

4       Under Rule 23(a)(4), plaintiffs must demonstrate that "the representative parties will fairly and

5   adequately protect the interests of the class." When considering the adequacy of a class representative,

6   courts generally consider only two questions "(1) [d]o the representative plaintiffs and their counsel

7   have any conflicts of interest with other class members, and (2) will the representative plaintiffs and

8   their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

9       Defendants do not challenge the adequacy of plaintiffs' representation. The first prong of the

10  test has been satisfied since plaintiffs have represented that no conflicts exist between the proposed class

11  members. The Court finds that the second prong has been satisfied as well. Plaintiffs have prosecuted

12  this case since 2008, and have participated in discovery and appeared at hearings. Additionally,

13  plaintiffs submit ample evidence of their counsel's experience and success in past class action lawsuits.

14  *See* Compton Decl., Docket No. 75.

15

16  **II.     Rule 23(b)(3)**

17      **A.      Predominance**

18      Under the Rule 23(b)(3) predominance requirement, the Court must go beyond asking whether

19  any common questions exist and ask whether these common questions "predominate over any questions

20  affecting only individual members" of the putative class. Fed. R. Civ. P. 23(b)(3). In other words, the

21  predominance analysis focuses on "the relationship between the common and individual issues. When

22  common questions present a significant aspect of the case and they can be resolved for all members of

23  the class in a single adjudication, there is clear justification for handling the dispute on a representative

24  rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks and citation

25  omitted). Ultimately, the Rule 23(b)(3) inquiry "tests whether proposed classes are sufficiently cohesive

26  to warrant adjudication by representation." *Id.* (citation omitted).

27

28                                               7

Plaintiffs advance two sets of arguments in support of their position that common questions of law or fact predominate over individual inquiries.

First, they contend that each of the claimed exemptions can be fully decided based on at least one common question unique to each exemption. The professional exemption question can be resolved, according to plaintiffs, by deciding whether the governing statute, CAL. CODE REGS. tit. 8, § 11040 (2001) (California Wage Order No. 4-2001), requires that accountants have a license in order to qualify or, as plaintiffs assert in their reply papers, if the statutes treat unlicensed accountancy as a "learned or artistic profession."[1]  The administrative exemption issue, according to plaintiffs, can be decided by inquiring whether or not class members worked "under only general supervision" and whether class members' work is "directly related to management policies or general business operations."[2]  Plaintiffs

---

[1] The professional exemption, CAL. CODE REGS. tit. 8, § 11040(3), applies to an employee who, among other things, "(a) [] is licensed or certified by the State of California and is primarily engaged in the practice of one of the following recognized professions: law, medicine, dentistry, optometry, architecture, engineering, teaching, or accounting; or (b) [] is primarily engaged in an occupation commonly recognized as a learned or artistic profession . . . ."

CAL. CODE REGS. tit. 8, § 11040(3)(b) defines "learned or artistic profession" as an employee who is primarily engaged in the performance of:

(i) Work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental . . . processes . . . ; or

(ii) [omitted]; and

(iii) Whose work is predominantly intellectual and varied in character . . . and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

[2] An employee can qualify for the administrative exemption, CAL. CODE REGS. tit. 8, § 11040(2), when he or she:

a) performs non-manual work directly related to management policies or general business operations of his/her employee or his/her employee's customers;

b) customarily and regularly exercises discretion and independent judgment;

c) regularly assists an employee employed in a bona fide executive or administrative capacity;

d) who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge;

e) executes under only general supervision special assignments and tasks;

8

1   point to statutes and to Deloitte policies that restrict the discretion of class members as evidence that

2   class members did not work "under only general supervision."

3       Second, plaintiffs argue that the validity of every claimed exemption can be resolved through

4   an inquiry of whether the proposed class members exercised discretion and independent judgment with

5   respect to matters of significance.

6       Plaintiffs cite *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586 (E.D. Cal. 2008),[3] to

7   support their contention that common issues predominate in this case.  In *Campbell*, employees of

8   PricewaterhouseCoopers (PwC) were divided into several categories, with the "higher" positions

9   requiring a CPA license and the "lower" positions occupied by persons who were not certified.  *Id.* at

10  590.  The plaintiffs argued that the professional and administrative exemptions could be decided on a

11  class-wide basis under the common question of whether employees exercised discretion and independent

12  judgment.  *Id.* at 599.  The *Campbell* plaintiffs also argued, as plaintiffs do here, that the second avenue

13  of the professional exemption, the "learned professional exemption," did not apply "because it would

14  require disregarding the specific requirements for the recognized profession of accounting in favor of

15  the more general requirements for learned professions."  *Id.* at 597.  Without resolving the question, the

16  court found that the plaintiffs' argument "had great force."  *Id.*  The court held that even if the learned

17  profession exemption were applicable, it would present "a common predominant question."  *Id.*  Class

18  certification was provisionally granted by the court, because the court determined that "[a]lthough there

19  [was] . . . evidence of variation in the duties performed by associates . . . the duties are nevertheless

20  ─────────────────

21      f)  is primarily engaged in duties that meet the test of the exemption; and

22      g) earns a monthly salary equivalent to no less than two times the state minimum wage for full-
        time employment.

23
    [3]  The *Campbell* court granted plaintiffs' motions for class certification, but certified the matter
24  for interlocutory appeal.  *Campbell*, 253 F.R.D. at 606.  The Ninth Circuit declined to accept that ruling
    for interlocutory appeal.  *See* May 16, 2008 Order (Docket No. 6, No. 08-80054).  Thereafter, the
25  *Campbell* court ruled in favor of plaintiffs on summary judgment, and again certified the order for
    interlocutory appeal.  *Campbell*, 602 F.Supp.2d 1163 (E.D.Cal. 2009).  The Ninth Circuit granted
26  permission to appeal, and the appeal is currently pending before that court.  *See* June 30, 2009 Order
    (Docket No. 6, No. 09-80059).
27

28                                          9

1   sufficiently similar to warrant class treatment." *Id.* at 605.

2       Defendant counters that plaintiffs cannot establish that common issues predominate because

3   determining the applicability of the professional and administrative exemptions will require an inquiry

4   into the individual experiences of the proposed class members.  Defendant points first to the fact that

5   different levels of employees perform different tasks.  For example, defendant argues that an Audit

6   Assistant would normally complete less complex, less risky audit sections, while an Audit In-Charge

7   might be involved in planning audit engagements or supervising and assigning work.  In addition to the

8   variation in work performed by different levels of employees, defendant also contends that unlicensed

9   employees at Deloitte performed work outside of their level, and that tasks within a given level varied

10  in complexity.  Defendant argues that because each proposed class member had a different experience

11  during the course of their employment at Deloitte, it will be impossible for the Court to determine the

12  applicability of the exemptions on a class-wide basis.

13      Defendant cites several cases in support of its contention that class certification is not

14  appropriate for unlicensed employees of accounting firm.  In *Mekhitarian v. Deloitte & Touche LLP*,

15  No. 07-0412, slip op. (C.D. Cal. Nov. 3, 2009), the proposed class consisted of Tax Associates and Tax

16  Seniors in  Deloitte's Lead Tax Services group, who were allegedly improperly classified as exempt

17  under the administrative and professional exemptions of Wage Order 4-2001. *Id.* at 1.  The court denied

18  class certification, deciding that the wide variety of class member experiences in the Tax Services Group

19  could not be condensed into common issues of law or fact.  *Id.* at 7.  In *Wirth v. Grant Thornton, LLP*,

20  No. 09-0832, slip op. (C.D. Cal. July 29, 2009), the defendant was a large public accountancy firm with

21  a breakdown of employee classification similar to the case at hand.  *Id.* at 1.  The plaintiff was an

22  unlicensed accountant who alleged that he was denied overtime payments and meal breaks in violation

23  of California labor laws, and based his predominance claims under the same exemptions asserted by

24  plaintiffs in the present case.  *Id.* at 2.  The court denied class certification because "the exemptions

25  require inquiries into levels of discretion, supervision, and independent judgment, it is necessary to

26  discover the specifics of the actual work being done by the employee." *Id.* at 6.  Plaintiffs contend that

27

28                                              10

1    none of the cases cited by defendant involved company policies or job responsibilities as restrictive as

2    those in the case at hand.

3           The Court agrees with plaintiffs that common questions of law or fact predominate over

4    individual questions.  Most of defendant's evidence regarding class members' job duties and purported

5    levels of discretion goes to the merits of plaintiffs' claims, rather than whether certification is proper.

6    Defendant asserts that plaintiffs will not be able to prove that the class members were exempt, because

7    some unlicensed employees were able to exercise discretion while others were not.  However, common

8    questions are present in plaintiffs' complaint, including whether accounting is a learned or artistic

9    profession, whether plaintiffs worked under less than general supervision, and whether plaintiffs

10   exercised discretion and independent judgment with respect to matters of significance.  Resolution of

11   these questions, according to plaintiffs, will not require factual inquiries into the experiences of every

12   class member because the Court is only being asked to ascertain what effect the Deloitte policies and

13   outside regulations have on the class as a whole.  Without, at this juncture, evaluating plaintiffs'

14   likelihood of success on the merits, plaintiffs should have the opportunity to prove that Deloitte policies

15   and procedures, along with other restrictive regulations mentioned in the briefs, produced such a

16   restrictive environment that class members were not able to qualify for the professional and

17   administrative exemptions.  Furthermore, both parties agree that plaintiffs' derivative claims are

18   dependent on the misclassification claims.  Since the Court has determined that the misclassification

19   claims are appropriate for class resolution, the derivative claims are also capable of being resolved on

20   a class-wide basis.

21

22          **B.      Superiority of Class Resolution**

23          Plaintiffs must also demonstrate that a class action is "superior to other available methods for

24   fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "Where classwide

25   litigation of common issues will reduce litigation costs and promote greater efficiency, a class action

26   may be superior to other methods of litigation," and is certainly superior "if no realistic alternative

27

28                                                   11

exists." *Valentino*, 97 F.3d at 1234-35.  Plaintiffs argue that a class action is superior to other methods of adjudication in that bringing separate suits for every class member against a large business entity such as defendant would be cost prohibitive.  Plaintiffs have also asserted that there is no other pending litigation involving these claims, and that this Court would be an appropriate forum because it is experienced in wage and hour cases and class actions.

Defendant does not directly contest these assertions, although it would presumably argue that the fourth Rule 23(b)(3) factor, "the likely difficulties in managing a class action," would not favor class certification.  However, on this record the Court agrees with plaintiffs that class action is the superior vehicle for bringing their claims.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' Motion for Class Certification. (Docket Nos. 75 & 81).

**Counsel for plaintiffs and defendant are ORDERED to meet and confer concerning the content, manner and timing of sending notice to the class, and shall provide their proposals on these issues at the April 2, 2010 case management conference.**

**IT IS SO ORDERED.**

Dated: March 23, 2010

SUSAN ILLSTON
United States District Judge

12