IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES BRADY, *et al.*,

    Plaintiffs,

  v.

DELOITTE & TOUCHE LLP,

    Defendant.

                               /

No. C 08-177 SI

**ORDER GRANTING DEFENDANT'S MOTION FOR DECERTIFICATION AND SETTING FURTHER CASE MANAGEMENT CONFERENCE FOR APRIL 20, 2012 AT 3:00 PM**

Now before the Court is defendant's motion for decertification of the class. After consideration of the parties' arguments, briefing, and submission of supplemental authority, the Court GRANTS defendant's motion for decertification. The Court will hold a case management conference on April 20, 2012 at 3:00 p.m.

**BACKGROUND**

In an order filed March 23, 2010, the Court certified pursuant to Federal Rule of Civil Procedure 23(b)(3) a class of salaried California employees of defendant's "Audit line of service" who were not licensed accountants and were not paid overtime for working more than eight hours in a day or forty hours in a week. Docket No. 134. The class includes employees in the Audit Assistant, Audit Senior Assistant, Audit In-Charge, and Audit Senior positions, and they allege wage and hour violations under California law. Defendant claims that these unlicensed accountants are exempt under the professional and administrative exemptions set forth in California Wage Order No. 4-2001.

In certifying the class, this Court relied in part on the district court's rulings in *Campbell v. PricewaterhouseCoopers, LLP*, 602 F. Supp. 2d 1163 (E.D. Cal. 2009), that unlicensed accountants were categorically ineligible for the "learned professional" path of the professional exemption set forth

in California Wage Order No. 4-2001.[1] The Court's class certification order also cited statutes, professional accounting standards, and Deloitte policies that, according to plaintiffs, restricted the discretion of class members and therefore precluded class members from falling within the administrative exemption.

The Ninth Circuit accepted an interlocutory appeal of the district court's summary judgment order in *Campbell*, and defendant moved to stay a ruling on summary judgment motions in this case pending the resolution of *Campbell*. In an order filed November 2, 2010, this Court granted defendant's motion to stay, finding that two of the issues raised by the parties' summary judgment motions – whether unlicensed accountants are precluded as a matter of law from the professional exemption, and how the phrase "under only general supervision" should be interpreted when determining whether employees qualify for the administrative exemption – were before the Ninth Circuit in *Campbell*, and thus that a stay was in the interest of judicial efficiency.

On June 15, 2011, the Ninth Circuit issued its decision in *Campbell v. Pricewaterhouse Coopers*

---

[1] IWC Wage Order 4-2001 states,
The following requirements shall apply in determining whether an employee's duties meet the test to qualify for an exemption . . . :

. . .

(3) Professional Exemption. A person employed in a professional capacity means any employee who meets all of the following requirements:

(a) Who is licensed or certified by the State of California and is primarily engaged in the practice of one of the following recognized professions: law, medicine, dentistry, optometry, architecture, engineering, teaching, or accounting; or

(b) Who is primarily engaged in an occupation commonly recognized as a learned or artistic profession. For the purposes of this subsection, "learned or artistic profession" means an employee who is primarily engaged in the performance of:

(i) Work requiring knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or work that is an essential part of or necessarily incident to any of the above work.

IWC Wage Order 4-2001, 1(A)(3)(b)(i).

2

*LLP*, 642 F.3d 820 (9th Cir. 2011). The Ninth Circuit reversed the district court's holding that unlicensed accountants were categorically ineligible for the professional exemption. The district court had held that unlicensed accountants could not be exempt under subsection (b) of the exemption (the learned profession prong) because subsection (a) enumerates accounting as a profession and expressly requires licensure in California. "[A]ccording to the district court, unlicensed accountants like Plaintiffs are entirely ineligible for the professional exemption. They cannot fall under subsection (a) because they are not licensed, and they cannot fall under subsection (b) because (a) is the sole provision covering accountants." *Campbell*, 642 F.3d at 825.

The Ninth Circuit disagreed, holding that "the exemption plainly allows accountants to fall under subsection (b) [persons who are "primarily engaged in an occupation commonly recognized as a learned or artistic profession"], subject to meeting the specific requirements of that subsection." *Id*. at 826. The court examined the structure and language of the professional exemption and stated,

> In fact, the structure of the professional exemption strongly suggests the IWC intended for subsection (b) to cover some accountants. A later subsection, subsection (e), mandates that "[s]ubparagraph (b) above is intended to be construed in accordance with" several then-existing federal regulations. § 11040(1)(A)(3)(e). These regulations include former 29 C.F.R. § 541.308 (2001). *Id*. At the time, § 541.308 provided:
>
>> [S]ome employers erroneously believe that anyone employed in the field of *accountancy*, engineering, or other professional fields, will qualify for exemption as a professional employee by virtue of such employment. While there are many exempt employees in these fields, the exemption of [an] individual depends upon his duties and other qualifications.
>
> § 541.308(a) (emphasis added). Thus, to construe subsection (b) specifically, the IWC incorporated a former federal regulation that explicitly references accountants. It would make little sense for the IWC to do this if subsection (b) was not intended to cover those accountants who meet its requirements.

*Campbell*, 642 F.3d at 827 (brackets and emphasis in Ninth Circuit opinion). The court continued, "Of course, our plain meaning interpretation does not mean that every unlicensed accountant will fall under subsection (b). Each case will require a fact-specific inquiry into whether the unlicensed accountant meets the subsection's various benchmarks—e.g., engaging in work that is 'predominantly intellectual and varied in character.' § 11040(1)(A)(3)(b)(iii)." *Id*. The court also stated,

> Although we express no opinion on how easily or frequently unlicensed accountants might satisfy subsection (b), we do not agree that an unlicensed accountant could never possibly do so. To conclude otherwise would require us to ignore the potential for substantial variance from one unlicensed accountant to another. Even

3

within PwC alone, the record indicates significant differences in skill level, responsibility, and experience between Attest associates and senior associates, both of whom may be unlicensed.

*Id.* at 828; *see also id.* at 830 ("[T]he crucial touchstone for the professional exemption – especially subsection (b) – is the employee's actual job duties and responsibilities. . . . The record here contains myriad conflicting evidence about Plaintiffs' duties and responsibilities as unlicensed Attest associates. The parties dispute everything from what Attest associates actually do during audit engagements to whether PwC can reasonably expect unlicensed junior accountants to perform anything more than menial, routinized work. . . . Only a factfinder can weigh this voluminous conflicting evidence and determine whether Plaintiffs meet the standards of the professional exemption.").

*Campbell* also addressed the administrative exemption. "To exempt an employee under the administrative exemption, an employer must establish five elements:

1. The employee performs work 'directly related to management policies or general business operations' of either the employer or the employer's clients;
2. The employee 'customarily and regularly exercises discretion and independent judgment';
3. The employee works 'under only general supervision' while either: (1) performing work along specialized or technical lines requiring special training, experience, or knowledge, or (2) executing special assignments and tasks;
4. The employee is 'primarily engaged' in exempt work meeting the above requirements; and
5. The employee meets a minimum salary requirement."

*Id.* at 830-31 (citing § 11040(1)(A)(2)).

In *Campbell*, the district court granted summary judgment in favor of the plaintiffs, finding that there was no material question of fact regarding whether the plaintiffs' work during audit engagements was performed "under only general supervision." In reaching this conclusion, the district court relied on California Business and Professions Code § 5053, which provides that unlicensed accountants must be subject to "control and supervision [by] a certified public accountant." Cal. Bus. & Prof. Code § 5053. The district court also relied on a professional accounting standard requiring supervision of unlicensed accountants. *See* American Institute of Certified Public Accountants (AICPA) Professional Standard § 311.12 (Assistants should bring to the supervisor's attention "significant accounting and auditing questions raised during the audit so that he may assess their significance."). *Campbell*, 602 F. Supp. 2d at 1183-84. This Court's class certification order cited both Cal. Bus. & Prof. Code § 5053

4

and the AICPA Professional Standards as enabling class treatment of whether class members were subject to the administrative exemption.

In *Campbell,* the Ninth Circuit reversed on this point as well. The Ninth Circuit first noted that the "general supervision" requirement has not received much interpretation. *Campbell*, 642 F.3d at 831. The court then found that "[a]lthough these two provisions [relied on by the district court] tell us Plaintiffs must be supervised, they say nothing about whether that supervision must exceed mere 'general' supervision. Neither provision distinguishes general supervision from any other kind of supervision." *Campbell*, 642 F.3d at 831-32. The Ninth Circuit held that "[g]iven the unhelpfulness of these three[2] authorities and the numerous factual disputes in the record, the district court should not have disposed of this issue at summary judgment. Both parties introduced a wealth of evidence about the nature and scope of PwC's supervision over Plaintiffs. A jury should evaluate credibility and weigh this extensive conflicting evidence." *Id*. at 832.

The Ninth Circuit also found that the record contained material fact questions on the first element of the administrative exemption– whether the plaintiffs' work directly related to management policies or general business operations of either PwC or its clients. The Ninth Circuit stated,

> Although the record contains evidence that Plaintiffs may do some work affecting PwC's own management and operations — e.g., participating in internal committees — this work is clearly not the bulk of an Attest associate's responsibilities. The more important question, and the one the jury will need to resolve, is whether Plaintiffs' work for PwC's clients during audit engagements is of "substantial importance" to the management or operations of the clients' businesses. § 541.205(a). This inquiry will be fact-intensive: "It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business." Id. § 541.205(c)(1).

*Id*. at 832. The Ninth Circuit further stated, "[w]hile we recognize Plaintiffs are on the low end of PwC's hierarchy, we see no authority that would bar their audit work from meeting this test as a matter of law." *Id*. The court found that whether this element was met "will depend on how the jury resolves the numerous factual disputes discussed above concerning what Attest associates actually do (and what PwC reasonably expects them to do) during audit engagements." *Id*. The court found that resolution

---

[2] The district court had also cited the DLSE's Enforcement Policies and Interpretations Manual, which contains several examples of general supervision. However, both the district court and the Ninth Circuit agreed that the examples provided in the manual were circular and not helpful to the analysis.

5

1 of those factual disputes would, in turn, affect the fourth element of the exemption – whether the
2 plaintiffs are "primarily engaged" in exempt work. *Id*. at 832-33.

3 After the Ninth Circuit issued its decision in *Campbell*, this Court lifted the stay. Defendant then
4 moved for decertification of the class in light of *Campbell*, as well as the Supreme Court's intervening
5 decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

**LEGAL STANDARD**

The decision as to whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003). A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. Proc. 23(a).

A plaintiff must also satisfy at least one of the three requirements listed in Rule 23(b): (1) there is a risk of substantial prejudice from separate actions, (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate, or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. Proc. 23(b).

Pursuant to Federal Rule of Civil Procedure 23(c)(1), an order certifying a class "may be altered or amended before final judgment." In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met. *See O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000). "Although certification decisions are not to focus on the merits of a plaintiff's claim, a district court reevaluating the basis for certification may consider its previous substantive rulings in the context of the history of the case, and may consider the nature and range of proof necessary to establish the class-wide allegations." *Marlo*

6

*v. UPS*, 251 F.R.D. 476, 479 (N.D. Cal. 2008) (internal citations omitted). While defendant has the burden of proof on the merits of its affirmative defenses, plaintiffs have the burden of proof in regard to satisfying Rule 23. *Marlo v. UPS*, 639 F.3d 642, 647 (9th Cir. 2011) (in motion for decertification, although employer has the burden of proof regarding applicability of wage and hour exemption, the plaintiff "bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met")).

**DISCUSSION**

Defendant contends that the common questions relied on by this Court in its March 2010 certification order have been resolved in defendant's favor in *Campbell*, and that the evidence shows that individual fact issues predominate. Defendant argues that the Court cannot determine the professional exemption on a class-wide basis because unlicensed accountants are not categorically ineligible for the exemption, and that the applicability of the exemption will "require a fact-specific inquiry into whether the unlicensed accountant meets the subsection's various benchmarks — e.g., engaging in work that is 'predominantly intellectual and varied in character.'" *Campbell*, 642 F.3d at 827. Defendant contends that the evidence shows that there is wide variation regarding class members' work and job duties. With regard to the administrative exemption, defendant argues that after *Campbell*, the statutes, professional standards and Deloitte policies that the Court cited in its class certification order do not categorically 0preclude class members from satisfying the exemption's requirement that employees work under "general supervision," and that the evidence shows that class members are subject to differing degrees of supervision, and exercise varying degrees of discretion and independent judgment.

Plaintiffs contend that the Rule 23 requirements are still met, and assert that "most if not all of the evidence [that plaintiffs] would present at trial would be the statutes, regulations and Deloitte common policies . . . which apply equally to all [class members]." Plaintiffs' Opp'n at 25:1-3. As to the professional exemption, plaintiffs argue that unlicensed accountants are not "professionals," and thus that the applicability of this exemption can be determined on a class-wide basis. For support, plaintiffs cite inapposite cases addressing whether persons unlicensed by the state Board of Accountancy may hold themselves out as accountants. *See id.* at 8:14-9:14 (citing *Chen Chi Wang v. United States*, 757

7

1 F.2d 1000 (9th Cir. 1985) (holding unlicensed accountant was not a "third party recordkeeper" entitled to notice under IRS regulations); *Moore v. California Board of Accountancy*, 2 Cal. 4th 999 (1992) (holding unlicensed accountants cannot hold themselves out to the public as "accountants")). These cases do not discuss the professional exemption. More importantly, this argument ignores *Campbell*'s explicit holding that unlicensed accountants *can* qualify for the professional exemption.

Plaintiffs also contend that class members are apprentices and/or trainees, and thus do not qualify for the professional exemption. Again, to the extent that plaintiffs assert that, as a matter of law, unlicensed accountants cannot qualify for the professional exemption, this contention is foreclosed by *Campbell*. To the extent that the factfinder is required to analyze the job duties and work performed by class members to determine whether they are apprentices and/or trainees who are ineligible for the professional exemption, the Court finds that plaintiffs have not demonstrated that common issues predominate. The voluminous and conflicting evidence in the form of class member declarations and deposition testimony shows wide variation in the job duties and work experiences of class members, and plaintiffs have not shown that this inquiry is amenable to common proof.[3]

Plaintiffs also argue that the applicability of the professional exemption can be determined on a class-wide basis by examining whether Deloitte's requirements for class member positions satisfy the specialized knowledge requirement of the learned professions prong of the professional exemption. After the Ninth Circuit decided *Solis v. State of Washington Dep't of Soc. & Health Servs.*, 656 F.3d 1079 (9th Cir. 2011), which addressed the learned professions prong of the professional exemption under the FLSA, the Court directed further briefing on whether the learned profession issue could be litigated on a class-wide basis. After careful consideration of the parties' supplemental briefing, the Court concludes that while a part of that inquiry can be decided on a class-wide basis (specifically,

---

[3] Plaintiffs also suggest that representative testimony could be used to prove liability. *See* Plaintiffs' Opp'n at 24:22-25:16. However, plaintiffs have not demonstrated that there is a reliable basis for extrapolating the testimony of some class members to the class as a whole, particularly given the conflicting evidence in the record. *See Marlo*, 639 F.3d at 949 (affirming decertification order where the plaintiff, who wanted to use an employee survey to prove liability in exemption case, "did not establish that UPS followed a reliable methodology in conducting the survey or that the survey was limited to [the plaintiff's job position]"); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1130-31 (N.D. Cal. 2011) (rejecting the use of representative testimony where deposition testimony "show[ed] that for every manager who says one thing about his or her job duties and responsibilities, another says just the opposite.").

8

whether Deloitte's hiring requirements satisfy the specialized instruction prong of the learned professions test), common issues do not predominate because under the Wage Order and *Campbell*, exempt status turns on what employees actually do. Based on the record before the Court, which contains numerous class member declarations attesting to a wide variation in job duties and responsibilities, "[t]here is a significant risk that the trial would become an unmanageable set of mini-trials on the particular individuals presented as witnesses." *Marlo*, 251 F.R.D. at 486.

With regard to the administrative exemption, plaintiffs assert that the question of whether class members work under only "general supervision" can be decided on a class-wide basis because all class members are subject to stringent policies and standards regarding supervision. However, *Campbell* addressed two of these statutes and standards – Cal. Bus. & Prof. Code § 5053 and AICPA standards – and held that while they require supervision of unlicensed accountants, neither specifies what level of supervision is required, and thus they do not as a matter of law prevent unlicensed accountants from satisfying the requirement of the administrative exemption for work under only general supervision. *See Campbell*, 642 F.3d at 831-82.

Plaintiffs nevertheless contend that class members are categorically excluded from the exemption when these same provisions are combined with Deloitte standards and Public Company Accountancy Oversight Board ("PCAOB") standards. However, as defendants note, the language of the AICPA, PCAOB and Deloitte standards on the issue of "extent of supervision" is almost identical. The AICPA, PCAOB and Deloitte standards all describe the level of required supervision as "depend[ing] on many factors," and none mandate that supervision be more than general. *Compare* AICPA § 311.28 ("The extent of supervision appropriate in a given instance depends on many factors, including the complexity of the subject matter and the qualification of the persons performing the work, including knowledge of the client's business and industry."); PCAOB AU 311.11 ("The extent of supervision appropriate in a given case depends on many factors, including the complexity of the subject matter and the qualifications of persons performing the work."); *and* Deloitte AAM 2120.09 ("The nature, timing, and extent of direction and supervision . . . will vary depending on many factors, including the size and complexity of the entity, the area of audit, the risks of material Misstatement, and the capabilities and competence of personnel . . . .") (Docket No. 168, Ex. 11 (Ex. Q)). Thus, these

standards do not, on their own, show that class members are subject to any uniform level of supervision, and the declarations in the record suggest that class members have worked under varying degrees of supervision.

Citing *Bell v. Farmers Insurance Exchange*, 115 Cal. App. 4th 715 (2004) ("*Bell II*"), plaintiffs also contend that class members do not fall under the administrative exemption because they are "production" workers. Plaintiffs argue that this Court should apply the "administrative/production worker dichotomy" as discussed in *Bell II*, and conclude that because class members "produce" audits, they are therefore not exempt. However, in *Harris v. Superior Court*, 53 Cal. 4th 170 (2011), a California administrative exemption case, the California Supreme Court recently held that "the Court of Appeal improperly applied the administrative/production worker dichotomy as a dispositive test," and that whether work qualifies as "administrative" depends on the particular facts of the case. *Id*. at 190.

Plaintiffs also assert that Deloitte's audit methodology and review process preclude class members from exercising discretion and independent judgment. However, a review of that methodology (Model Audit Programs (MAPs) and the New Audit Methodology), as well as the class members' declarations discussing their use of MAPs, shows that the methodology does not preclude the exercise of discretion and independent judgment. For example, a number of class member describe, with specificity, using MAPs and exercising discretion and independent judgment because MAPs can contain open-ended questions and steps. Similarly, plaintiffs assert that class members do not exercise discretion and independent judgment because they are subject to multiple layers of review, and because class members are required to bring "significant accounting and auditing" questions to the attention of the audit partner or other management. However, neither of those facts precludes class members from exercising discretion or independent judgment.

In sum, the Court concludes that plaintiffs have not shown that the requirements of Rule 23(b)(3) are met.[4] Although there may be some common questions of law or fact, plaintiffs have not

---

[4] After the hearing on decertification, plaintiffs submitted a copy of the district court's order conditionally certifying a national FLSA collective action for Deloitte's unlicensed staff and senior associates in the audit line of service, in *In re: Deloitte & Touche Overtime Litig.*, 11-2461 (RMB)

demonstrated that common questions of law or fact predominate and that a class action is a superior method of adjudication.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for decertification. This order resolves Docket Nos. 200, 241 and 246. **The Court will hold a case management conference on April 20, 2012 at 3:00 p.m.**

**IT IS SO ORDERED.**

Dated: March 27, 2012

SUSAN ILLSTON
United States District Judge

---

(S.D.N.Y. 12/16/11). Plaintiffs in this case do not allege any FLSA claims. Further, the standard for conditional certification in an FLSA case is a lenient one, and a plaintiff seeking conditional certification need not show that Rule 23(b)(3)'s requirements are met.